## IN RE GREGORIO LACOT SALGADO

Argued January 9, 1952.—Decided January 31, 1952.

*Gregorio Lacot Salgado, pro se.*

Per Curiam: In the written reports which were submitted to us on November 28 of last year by the Protocol Inspector residing in the district of San Juan, appointed by this Court under the authority vested in us by the Notarial Act, as amended by Act No. 389 of 1951, in connection with Notary Gregorio Lacot Salgado's protocols, that in the 1949 and 1950 protocols he found the following irregularities:

### Protocol of 1949, which includes 14 deeds:

(1) In deed No. 1 the name of the creditor's wife is not given; and in No. 3 the seller's wife does not appear nor is her name set forth, and although there is a signature which apparently is hers, it is not stated that she is the wife or that she consents to the alienation, nor are her personal circumstances given.

(2) and (3) In No. 4 amendments, corrections and alterations were made and not mentioned. The same thing occurs in No. 14. Besides, there are blank spaces in both deeds.

(4) The closing memorandum does not appear immediately after the last deed.

(5) Deeds Nos. 2, 3, 4, 9 and 14 lacked internal revenue stamps in the total amount of $12.50.[1]

### Protocol of 1950, which includes 25 deeds:

(1) The closing memorandum of the protocol appears on a separate sheet and not immediately after the last deed, and the date of said memorandum, as to the day, is written in numbers only.

(2) In deed No. 4 the executing party Judita Osorio appears making a cross and affixing her fingerprints, Enrique González, who does not appear as a witness, signing at her request; and the personal circumstances of this party are not set forth nor is it stated that she does not know how to

---

[1] At the bottom of the report the Inspector manifests that the missing stamps in the foregoing deeds were affixed and canceled by the notary in his presence.

sign, nor who signs at her request. In that same deed the signature of one of the parties thereto follows the signature of one of the witnesses, and Judita Osorio appears on page 17 as Judita Sierra.

(3) In No. 7 Carmen Rodríguez does not appear as a party to the deed and, nevertheless, she signed it. In No. 9 witness Luis A. Font signed before the executing party Enrique Bairán. In No. 18 the executing party Zenón Delgado apparently does not know how to sign and affixed his fingerprints, but no witness appears signing at his request, nor are such facts set forth in the deed. Neither is the witness's signature preceded with a note to that effect, and the initials of the witnesses were not added to his fingerprints. In No. 19 Carlos Juan Berríos, party thereto, apparently does not know how to sign and the notary did not state this fact, nor who signs at his request, but in the margin it is set forth "Witness to the fingerprints and at the request of Carlos Juan Berríos, who claims that he does not know how to sign, Virgilio León." The phrase "witness to the mark" (*sic*) and the signature Virgilio León are in a handwriting different from the rest; and his fingerprints appear, but not his initials. In No. 22, without the notary setting it forth, the witness Enrique González appears signing at the request of América Rivera, and her fingerprints appear in the margin.

(4) On the last page of some deeds the initials of the parties or of the witness signing at their request are missing.

(5) In deeds Nos. 1, 2, 5, 8 and 18 there are amendments and corrections which should have been mentioned.

(6) In No. 8, page 40, numbers are used to indicate measurements and due to the fact that the number was amended it can not be ascertained whether it is 15 or 16. In No. 20, pages 112 and 113, numbers only are used to indicate amounts; and in No. 23 at page 127 there is an interlineation reading "of one thousand (1,000) dollars," below the lower margin, without it being mentioned.

(7) There is a numerical index which fails to state the names of the parties, there is no alphabetical index and certain documents incorporated in the protocol are not numbered.

(8) In deeds Nos. 3, 4, 5, 8, 9, 10, 11, 14, 17, 23, 24 and 25 internal revenue stamps in the total amount of $18.50 are missing.[2]

Upon receipt of the foregoing reports, on December 6 of last year we entered an order directing that notary Lacot Salgado be notified thereof and giving him a 15-day period to state the reasons why he should not be disciplined. The notary appeared in writing within the term granted and stated in brief as follows:

(1) He admits that in deed No. 1 the name of the creditor's wife is not given, but he alleges that since it was clearly stated that said creditor was married and since a loan contract was involved, he thinks that the wife's appearance was unnecessary.

(2) He admits that in deed No. 3 the seller's wife does not appear nor is her name set forth, but that it was an oversight. He contends, however, that this gap was filled upon her signing the deed as one of the parties thereto and upon her initials appearing on each page, which, in his judgment, is equivalent to having given her express consent in the contract.

He admits that blanks spaces were left in the deeds mentioned by the Inspector, but he thinks that since a list of personal property being mortgaged was involved, it was not necessary to fill those spaces. He informs the Court that fulfilling the Inspector's desires he has drawn the corresponding lines in said spaces.

(3) He admits that the closing memorandum was not begun on the last page of the last deed, but he considers that

---

[2] As it happened for the year 1949, at the bottom of his report the Inspector tells us that the internal revenue stamps missing in the aforesaid deeds of the 1950 protocol were affixed and canceled in his presence by the notary.

this is not a violation of the Notarial Act inasmuch as said memorandum appears on the last page of the protocol.

As to the fact that he did not mention amendments and modifications, he admits that much, but alleges that only simple corrections were made which he thinks needed no mentioning since they were very clear.

(4) He admits that internal revenue stamps in the above-mentioned amounts were missing from the 1949 protocol, but he claims that this was due to an involuntary and erroneous computation thereof and that as soon as the differences in the computation were explained he cancelled the proper stamps in the Inspector's presence.

As regards the report for 1950:

(1) He admits that the closing memorandum is on a separate sheet, but he thinks that this is not a violation of the Notarial Act and that numbers may be used in opening or closing memoranda.

(2) He admits the observations contained in the Inspector's second paragraph, but he thinks that there is no serious irregularity inasmuch as when signing at the request of Judita Osorio, Enrique González states that he does it because the former does not know how to sign, a cross made by the former appearing thereon and, also, her thumb prints on each and every page of the document, and that although it is true that Enrique González does not appear as a witness, nevertheless, the two witnesses required by law appeared in said document, believing in good faith that the appearance of three witnesses instead of two does not actually violate the Notarial Act. And that the fact that on page 17 Judita Osorio appears as Judita Sierra was simply a clerical error; that Hortensio Gautier signed after the witness Monserrate Monge, because the former signed rapidly, without giving the notary time to tell him where he had to sign, and so as to leave no space between the signatures, the notary asked the witness to sign in the aforesaid space.

(3) He admits that in deed No. 3 the wife of one of the parties thereto does not appear, but she signed the deed and initialed each and every one of the pages thereof, showing thereby, in his judgment, her conformity with the transaction involved.

He admits that in deed No. 9 the witness Font appears signing before Bairán, party thereto, but in his judgment this neither voids the contract nor constitutes a violation of the Notarial Act.

He accepts that in deed No. 18 Zenón Delgado, not knowing how to sign, affixed his fingerprints thereto, and that it is not expressly stated that a witness signs at his request, but that the truth is that this was done and due to an oversight he did not set it forth in the deed.

That the initials of the witness signing at the request of the executing party were not added to the fingerprints of the latter because he understands that the Act only requires the fingerprints of the executing party.

He admits that in deed No. 19 the executing party Carlos Juan Berríos does not know how to sign and that this fact was not set forth, but he alleges that it was due to the fact that he learned of that incapacity at the very moment that the parties and witnesses to the deed were together and to make up for it Virgilio León signed as witness to the mark affixed by the party thereto, as well as to the fingerprints. And that the phrase "witness to the mark" and León's signature are in a different handwriting because such phrase was inserted by the notary himself. Moreover, he deems that the initials of the witness must not be added to the fingerprints of the executing party.

He accepts that Enrique González appears signing at the request of América Rivera, without it being set forth, but he contends that the executing party affixed her thumb prints on every page of the document.

(4) The initials of witnesses signing at the request of executing parties are not affixed on the ground that it is not

necessary; and that the initials of the executing parties do not appear on the last page of the deed because, their full signatures appearing he considers said initials on the last pages entirely unnecessary.

(5) He admits that there were no amendments, but corrections, on the pages and deeds mentioned in the fifth paragraph of the report, but he alleges that they were of such a nature that they did not affect in any way the contents of the document.

(6) He admits that on page 40 of deed No. 8 upon using numbers to indicate measurements a number was amended making it hard to determine whether it is 15 or 16, but he contends that since the property was clearly described previously, this fact does not affect the contract nor gives rise to misunderstandings. He accepts that it is true that in deed No. 20 only numbers are used to indicate amounts and that in No. 23 at page 127 a statement appears below the lower margin, which was not mentioned, but he thinks that the context of the document was so clear that mentioning was unnecessary.

(7) In connection with paragraph 7 he thinks that an alphabetical index is not necessary and believes that the numerical index, where the names of the parties and of the witnesses thereto are set forth, as well as the type of contract entered into, is enough. He thinks likewise that instruments incorporated in protocols should not be numbered since they are incorporated but do not form part of the aforesaid documents.

(8) He admits that in the deeds referred to in this paragraph of the report, the stamps mentioned by the Inspector are missing, but he alleges that this was due to an erroneous computation, such stamps having been affixed immediately in the Inspector's presence, as set forth by the latter in his report.

Finally this notary declares that he has "taken due notice of each and every one of the observations made by the

Protocol Inspector which we intend to follow to the letter henceforth, the undersigned notary honestly admitting in all good faith that he failed to be as zealous as he should have been in connection with the observations made by the Inspector, the latter seeing to it that the notarial practice conforms as closely as possible to the express provisions of our Notarial Act. This Honorable Court may notice from the foregoing reasons that the facts mentioned by the Inspector do not constitute serious irregularities, but simply inadvertences which in no way affected either the validity of the documents or the transactions of the parties thereto."

 We have emptied into this opinion almost verbatim the irregularities which were committed, in the judgment of the Protocol Inspector of the district of San Juan, by this notary in the 1949 and 1950 protocols, as well as the allegations of said notary in connection therewith, in order to present a clear picture of the situation. As admitted by the notary himself, he has not been as zealous as he should have been in his practice as a notary. Whether or not the irregularities he committed affect the validity of the documents or the transactions carried out therein, need not be determined for present purposes. But the fact is that §§ 14, 16, 17, 18, 19, and 30 of our Notarial Act were violated and that even accepting as true everything that the notary tells us to justify his failure to obey the law governing the subject matter, the fact remains that such irregularities were committed and that the statutory mandate was not complied with.

We shall not get to the point of saying as in *In re Arroyo*, 63 P.R.R. 764 that "His acts showed a persistent indifference and gross carelessness to his high duties in this respect," but it can not be gainsaid that Notary Lacot Salgado did not display the zeal and care expected of him in the exercise of the highly difficult functions of the notarial office. He being, however, a young man who has not practiced long his profession—when the irregularities herein mentioned started,

approximately three years and four months had elapsed since he was admitted to the bar and somewhat more than three years since he took his oath as a notary public—it will suffice to say that we do not approve the way in which he has practiced his profession of notary public and that should he commit new irregularities in the future, we shall punish him as provided by § 38 of the Notarial Act.